CALZADA, PLAINTIFF AND RESPONDENT, *v.* PAGÁN, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1, in an action for the execution of a deed, a survey of property, etc.

No. 1098.—Decided May 19, 1914.

SALE OF PROPERTY SUBJECT TO DIVISION—SURVEY—REPORT OF SURVEYOR—OBJEC-
TION.—The defendant sells half of a property to the plaintiff and binds him-

self to execute a deed after the property has been surveyed. The plaintiff brings an action for specific performance and at the trial both parties agree that an engineer be appointed to make the said survey, whereupon the court suspends the trial and approves the said agreement, stating that ''when the survey shall have been made and the questions at issue in the case settled'' it would order the delivery to the plaintiff of the land belonging to him and the execution of the deed. When the survey was being made the defendant expressed his disapproval of the southern boundary of the property as run by the engineer. The engineer made his report and the court, with the consent of the plaintiff and without hearing the defendant, approved it and rendered judgment in favor of the plaintiff. *Held:* That in view of the circumstances of the case the judgment appealed from should be reversed so that the court might hear both sides on the report of the engineer and, in case of objection, give the party objecting a chance to defend his rights.

The facts are stated in the opinion.

*Mr. José G. Torres* for the respondent.

*Mr. Manuel F. Rossy* for the appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 1, aproving a certain survey and ordering the defendant-appellant to deliver to the plaintiff-respondent half of a certain rural property in accordance with the said survey and to execute the corresponding deed.

Briefly, the complaint alleges the following:

1. That on August 6, 1912, defendant José Pagán privately sold to plaintiff José Calzada one-half of a property of ninety *cuerdas* which is described.

2. That the said sale was made for $1,500 cash, the seller agreeing to execute a deed of sale as soon as a survey could be made and the boundaries fixed, and it being covenanted that the plaintiff's land should be delivered to him from the southern part of the property and that the equivalent of a piece of land occupied by Alejo Matos in that part of the property to be reserved to the defendant should be subtracted from the plaintiff's half of the property.

3. That the defendant agreed to make the survey and fix the boundaries and that the plaintiff has been and is willing to reimburse him for one-half of the expenses incurred in so doing, but that notwithstanding the demands of the

plaintiff upon the defendant, he has refused to comply with the agreement.

The complaint concludes with the prayer that the court order the defendant to comply with the agreement by making the survey and fixing the boundaries of the property and by executing the corresponding deed and rendering an accounting of the products of the property, and that he be taxed with the costs and attorney's fees.

In his answer the defendant acknowledged the contract alleged in the complaint and stated that the survey had not been made because the plaintiff objected to the survey of the whole property and desired that only the half purchased by him should be surveyed.

The defendant also filed a counterclaim and prayed the court to order a survey of the whole property, etc.

A day having been set for the trial, both parties appeared and stated their respective cases, "and when the plaintiff was about to introduce his evidence both parties agreed that an expert civil engineer, Antolín Nin, should survey and fix the boundaries of the property of ninety *cuerdas,* more or less, as described in the first allegation of the amended complaint, which is admitted by the defendant, and divide it so as to deliver to the plaintiff the south half, or the part bounded by the property of Francisco Calzada, formerly of Ramón Rola, subtracting therefrom the equivalent of a piece of land occupied by Alejo Matos in the northern part, which should remain the property of the latter, and that when the survey should be made and the questions at issue in this case should be settled, the court should order the delivery to Calzada of the land belonging to him and the execution of the proper deed by Pagán." Transcript, p. 12.

By virtue of the said agreement, the district court rendered the following decision on May 2, 1913:

"That the survey be made of the property of ninety *cuerdas,* more or less, according to the description contained in the first allegation of the complaint, which is admitted by the defendant. That

the area resulting therefrom be divided, that the southern half which is bounded by the lands of Francisco Calzada, formerly belonging to Ramón Rola, be apportioned to the plaintiff, subtracting from Calzada the equivalent of a piece of land occupied by Alejo Matos in the northern half, which shall remain his property, and that when the survey has been made and the questions at issue herein have been settled, the court will order the delivery to the plaintiff of the portion of land belonging to him and the execution of the deed." Transcript, p. 13.

In view of the agreement and the decision of the court, the trial was suspended and the parties were charged to notify Civil Engineer Nin of his appointment. They did so, and it appears from the statement of the case that towards the end of July, 1913, the said engineer filed in the office of the secretary of the court a plan of the property belonging to José Pagán, José Calzada and Alejo Matos, in the ward of Hato Puerco, Loiza, accompanied by a certificate of the said Nin stating that the property is bounded on the north by lands of the Succession of Calzada; on the east by lands of Juan López de Victoria and the river; on the south by lands of Ramón Rola, now of Francisco Calzada; and on the west by lands of the Succession of Febres; that he went upon the property accompanied by Calzada and Pagán and as a basis took the description of the property, the plan of the property of Francisco Calzada, formerly of Rola, made by Surveyor Abino Pérez on February 28, 1898, and the testimony of Calzada, Pagán and Albendoz, adjoining owners; that on running the boundaries Pagán wanted the survey extended to other lands beyond the limits indicated and that when the engineer told him that he had to confine himself to the order of the court, Pagán left, and that within the boundaries of the plan made there is an area of 26 hectares and 60 ares, equivalent to 67.56 *cuerdas,* of which 23.78 *cuerdas* on the south side of the property, or one-half of the whole less 10 *cuerdas* held by Alejo Matos on the north, belong to Calzada, and 33.78 *cuerdas* on the north belong to Pagán.

Upon the filing of the certificate of the engineer and the plan made by him, the court, with the consent of the plaintiff and without hearing the defendant, approved the survey and rendered the judgment aforesaid, from which the present appeal was taken. The appellant maintains that in so doing the court departed from the rule fixed by itself, with the consent of both parties, in its order of May 2, 1913.

The certificate and plan of the engineer are included in the transcript. The facts which we have set out herein, taken from the statement of the case, are shown in the certificate. The statement of the case does not contain the data which served as a guide to the engineer nor the information furnished him by the abutting owners. From the certificate and plan it appears that the property contained only 67.58 cuerdas instead of 90, and that it is at present bounded on the north by the lands of a Succession of Calzada and on the south, which is the side where the plaintiff, José Calzada, was to take his property, by lands of one Francisco Calzada.

In view of all these circumstances and taking into consideration the terms in which the order of May 2, 1913, is drafted, we are of the opinion that after the presentation of the engineer's report the case was really not entirely ready for judgment. Before rendering judgment the district court should have heard both sides regarding the report submitted, and, in case of objection, should have given the objecting party an opportunity to defend his rights according to law.

The judgment should be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

> *Reversed and case remandad to the lower court for further proceedings in accordance with this opinion.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.